**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MARQUES JOHNSON,** | ) | |
| | ) | **Case No.  3:14-cv-1071** |
| **Petitioner,** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JAMES HOLLOWAY, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. The petitioner is serving a term of 18 years imprisonment imposed by the Davidson County Criminal Court on December 15, 2011, after the petitioner pleaded guilty to four counts of burglary of an automobile, one count of theft over $500, and one count of theft over $1.000. The respondent has filed an answer to the petition (ECF No. 29) stating that the petition should be denied because the grounds on which it is based are procedurally barred and meritless.

The matter is ripe for review and the court has jurisdiction. 28 U.S.C. § 2241(d). The respondent does not dispute that the petitioner's federal habeas petition is timely. (ECF No. 29 at Page ID# 507.) The respondent states that the federal habeas petition at issue here appears to be the petitioner's first application for federal habeas relief. (*Id.*)

Because a federal court must presume the correctness of a state court's factual findings unless the petitioner rebuts this presumption with 'clear and convincing evidence," 28 U.S.C. § 2254€(1), and because the issues presented can be resolved with reference to the state-court record, the court finds that an evidentiary hearing is not necessary. *See Schriro v. Landrigan*,

550 U.S. 464, 474 (2007) (holding that if the record refutes a petitioner's factual allegations or otherwise precludes habeas relief, the district court is not required to hold an evidentiary hearing (citing *Totten v. Merkle,* 137 F.3d 1172, 1176 (9th Cir. 1998))).  Upon review and applying the AEDPA standards, the court finds that the petitioner is not entitled to relief on the grounds asserted.  Accordingly, the petition will be denied and this matter dismissed.

## I.    PROCEDURAL BACKGROUND

The state prosecution arose from a series of motor vehicle burglaries that took place July 4 and 8, 2010.  The petitioner was indicted in case number 2010-D-3338 by the Davidson County grand jury and charged with two counts of burglary of an automobile (Tenn. Code Ann. § 39-14-402) and four counts of theft of property of varying amounts (Tenn. Code Ann. §39-14-103).  (ECF No. 28-1 at Page ID## 151-56.)  Additionally, the Davidson County grand jury indicted the petitioner in case number 2010-C-2568 and charged him with two counts of burglary of an automobile (Tenn. Code Ann. § 39-14-402) and three counts of theft of property of varying amounts (Tenn. Code Ann. § 39-14-103).  (ECF No. 28-1 at Page ID## 160-66.)

On October 17, 2011, the petitioner submitted petitions under Tenn. R. Crim. P. 11 to enter a plea of guilty in each case, which the court accepted.  (ECF No. 28-1 at Page ID## 174-83.)  In case number 2010-C-2568, the petitioner pleaded guilty to two counts of burglary of an automobile and one count of theft of property over $500, the remaining counts to be dismissed, with an agreed-upon sentence of 6 years at 60% as to each count, with all counts running concurrently with each other.  (*Id.* at Page ID# 178; *see also* ECF No. 28-2, Transcript of Plea ("Plea Tr.") at Page ID## 204-05)  In case number 2010-D-3338, the petitioner agreed to plead guilty to two counts of burglary of an automobile and one count of theft of property over $1,000, the remaining counts to be dismissed, with an agreed-upon sentence of 6 years at 60% as to the

burglary counts and 12 years at 60% as to the theft count, with all counts running concurrently with each other.  (ECF No. 28-1 at Page ID# 183; *see also* ECF No. 28-2, Plea Tr. at Page ID## 204-05.)

Pursuant to the plea agreement, the court conducted a sentencing hearing to determine whether the sentence in case number 2010-C-3338 would run consecutively or concurrently with the sentence in case number 2010-C-2568.  (ECF No. 28-1 at Page ID# 184.)  After hearing testimony from the petitioner's aunt and mother, reviewing the pre-sentence report, and considering "all matters required by [state law]," the court ordered the 6-year sentence in case number 2010-C-2568 to run consecutively to the 12-year sentence in case number 2010-D-3338 for an effective 18-year sentence, to be served at 60%.  (*Id.* at Page ID# 185-87; *see also* ECF No. 28-3.)

The petitioner appealed the trial court's determination that his sentences should run consecutively to the Tennessee Court of Criminal Appeals ("TCCA"), which rejected his appellate arguments and affirmed the trial court's determination that petitioner's sentences should run consecutively in an unpublished opinion issued on October 18, 2012.  (ECF No. 28-7; *see also State v. Marques Sanchez Johnson*, No. M2012-00169-CCA-R3-CD; 2012 WL 5188136, at *1 (Tenn. Crim. App. Oct. 18, 2012) ["*Johnson I*"].)  The petitioner filed an application for permission to appeal to the Tennessee Supreme Court, which was denied on January 22, 2013.  (ECF No. 28-9.)

On December 10, 2013, the petitioner filed a *pro se* petition for post-conviction relief in the Davidson County Criminal Court.  (ECF No. 28-10 at Page ID## 353-67.)  On January 15, 2014, counsel was appointed to assist the petitioner, (*Id.* at Page ID# 379), and, on May 13, 2014, counsel filed an amended petition for post-conviction relief in the state court (*Id.* at Page

ID# 384-90).  The state court held an evidentiary hearing on June 6, 2014, (ECF No. 28-11, Post-Conviction Transcript ("P.C. Tr.") at Page ID# 405-38), and on June 30, 2014, the state court issued an order denying relief (ECF No. 28-10 at Page ID# 392-98).

The petitioner appealed to the TCCA, which denied relief on February 26, 2015.  (*See Marques Sanchez Johnson v. State,* No. M2014-01419-CCA-R3-PC, 2015 WL 832328, at *1 (Tenn. Crim. App. Feb. 26, 2015) ["*Johnson II*"].)  The Tennessee Supreme Court denied discretionary review on June 15, 2015.  (*Id.*)

On August 21, 2014, while his post-conviction proceeding was pending in state court, the petitioner filed a petition for the writ of habeas corpus in this court (ECF No.1) and a motion to hold the petition in abeyance pending exhaustion of state remedies (ECF No. 2).  On June 9, 2014, the petitioner filed a supplement to the petition (ECF No. 10).  On August 21, 2014, the court ordered that this action be stayed pending the resolution of the petitioner's state court proceedings.  (ECF No. 17.)  This case was reopened on April 5, 2016 (ECF No. 26) and the respondent timely filed his opposition on July 20, 2016 (ECF No. 29).

## II.    STATEMENT OF FACTS

Because the petitioner does not dispute, nor raise any claims pertaining to, the facts underlying his convictions, it is unnecessary to recite them here.  His claims do, however, implicate the evidence presented at the sentencing hearing, which the TCCA summarized as follows:

> At the sentencing hearing, the trial court heard testimony from Appellant's aunt, Gwendolyn Lashell Stewart.  She spoke fondly of Appellant but acknowledged that she recalled him first getting into trouble at around the age of ten.  She noted that he had a very lengthy criminal history as both a juvenile and an adult.  Ms. Stewart agreed that Appellant primarily supported himself through crimes of theft.

4

Angela Jones, Appellant's mother, testified at the hearing. She stated that Appellant lived with her for quite a while and was eager to help out his brothers and sisters. Appellant even helped her get medication when insurance would not pay for it. Ms. Jones acknowledged on cross-examination that Appellant had trouble as a juvenile, being placed by the State in Richland Village, Woodland Hills, Wilder Youth Center, and Taft Youth Development Center. She recalled that Appellant had been incarcerated several times as an adult but explained that Appellant supported himself and his family in part by crimes of theft.

The trial court ultimately ordered the sentences in the two cases to run consecutively to each other, finding:

> Based upon the record and the proof presented at the sentencing hearing, the Court finds that [Appellant] does have an extensive record of criminal activity and is a professional criminal who has continually committed criminal acts as a major source of livelihood. *See* [T.C.A.] § 40–35–115. Furthermore, consecutive sentencing is necessary given the severity of the offenses committed and in order to protect the public from further criminal acts committed by [Appellant]. *See State v. Wilkerson,* 905 S.W.2d 933 (Tenn.1995). For the foregoing reasons, the Court orders the six (6) year sentence in 2010–C–2569 to run consecutively to the twelve (12) year sentence in 2010–D–3338 for an effective eighteen (18) year sentence at sixty percent (60%) to serve

*Johnson I*, 2012 WL 5188136, at *3.

The petitioner also raises claims that implicate the state court's determination of his state post-conviction petition. The TCCA summarized the evidence presented at the post-conviction evidentiary hearing, in pertinent part, as follows:

> Petitioner testified that trial counsel never told him that he had a right to testify at the sentencing hearing. The trial court also did not inform him of this right. If he had testified, Petitioner stated that he would have admitted that he "made some mistakes in the past," but would have pointed out that most of his crimes were either misdemeanors or juvenile offenses. He would have also tried to "probably apologize to the victims that I did something to them."

> Petitioner also testified that trial counsel did not adequately investigate the value of the stolen property. He believed that some of the felony thefts

could have been reduced to misdemeanor thefts. Petitioner also claimed that trial counsel did not inform him of other plea offers from the State. Petitioner testified that trial counsel told him that the most time he could get would be twelve years. However, Petitioner admitted that he understood the terms of the plea agreement, including the provision that the trial court would determine whether the sentences from the two cases would be served concurrently or consecutively. Petitioner acknowledged that he accepted the plea agreement because of the risk of a longer sentence if he was convicted at trial.

Trial counsel[1] testified that he had been practicing law since 2008, and that over 95 percent of his cases were criminal defense. Trial counsel was appointed to Petitioner's case after Petitioner was indicted. Trial counsel received discovery from Petitioner's former attorney, which he reviewed with Petitioner. Trial counsel hired an investigator once Petitioner's case was set for trial. Trial counsel testified that he had multiple discussions with Petitioner throughout the case, including discussions about the charges he faced and the plea offers from the State. Trial counsel testified that he corresponded with Petitioner frequently and that Petitioner had a "real good grasp" on the case.

Trial counsel testified that Petitioner initially rejected a plea offer for a total effective sentence of twelve years because it was "too much time." Trial counsel testified that once this offer was taken off the table by the State, he continued to negotiate with [the] State for a better deal, but the best the State offered was the arrangement to which Petitioner ultimately agreed: a six-year sentence in one case and a twelve-year sentence in the other case, with the trial court to determine whether the sentences would run concurrently or consecutively. Trial counsel denied that he ever told Petitioner that the most time he could get would be twelve years. Trial counsel testified that Petitioner understood the plea agreement and that it was his choice to accept the offer.

Trial counsel testified that he discussed with Petitioner his right to testify at the sentencing hearing and the possibility of making a statement of allocution. Trial counsel advised Petitioner that his testimony would not be necessary in light of the other witnesses he presented at the sentencing hearing. However, trial counsel stated that it was Petitioner's decision not to testify.

On June 30, 2014, the post-conviction court filed an order denying post-conviction relief. The post-conviction court accredited the testimony of trial counsel "that he thoroughly consulted with the [P]etitioner regarding

---

[1] Trial counsel was Jonathan Williams of the Davidson County bar.

his case and possible sentencing scenarios." The post-conviction court found that Petitioner had not proven by clear and convincing evidence that trial counsel failed to inform him of his right to allocution and that Petitioner had not established prejudice from the supposed failure. The post-conviction court found that Petitioner "was informed and had sufficient knowledge of the nature and consequences of the plea and that he voluntarily and intelligently chose to enter the guilty plea."[1]

> Fn. 1 The post-conviction court's order also addressed several claims made in Petitioner's original pro se petition and dismissed those claims for lack of evidence. These claims were not raised on appeal and are, therefore, deemed abandoned. *See Ronnie Jackson, Jr. v. State,* No. W2008–02280–CCA–R3–PC, 2009 WL 3430151, at *6 n.2 (Tenn.Crim.App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal.").

*Johnson II*, 2015 WL 832328, at *2–3, *5 n.1.

## III.  ISSUES PRESENTED FOR REVIEW

In his *pro se* petition, the petitioner raises the following grounds for relief:

A. Trial counsel was ineffective for: (1) not forming an adequate working relationship with the petitioner; (2) failing to move to dismiss the indictments which were defective because they were based on Gene Donegan's testimony; (3) advising the petitioner to plead guilty despite knowing that the indictments were defective because they were based on Donegan's grand jury testimony; and (4) failing to allow the petitioner to give a statement in allocution at the sentencing hearing;

B. The trial court erred by: (1) failing to allow the petitioner to give a statement in allocution at the sentencing hearing; and (2) determining that petitioner's sentences should run consecutively;

C. The prosecutor committed: (1) prosecutorial misconduct by securing grand jury testimony from Donegan; and (2) a *Brady/Giglio* violation by failing to disclose the use of Donegan's false grand jury testimony.

(ECF No. 1 at Page ID# 2 and ECF No. 10 at Page ID## 33-34.)

## IV.    STANDARD OF REVIEW

This matter is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011); *Felkner v. Jackson*, 562 U.S. 594, 597 (2011).  "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).  "State-court factual findings  . . .  are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  AEDPA prevents federal habeas "retrials" and "ensure[s] that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, this court may not rely on the decisions of lower federal courts. *Lopez v, Smith*, 135 S. Ct.1, 4 (2014); *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).  Moreover, "clearly

established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Tennessee state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644-45 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Burt v. Titlow*, 134 S. Ct. 10, 16 (2013); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Indeed. "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

Under AEDPA, 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Davis v. Ayala*, 135 S. Ct. at 2198; *see also White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (explaining that the Supreme Court, "time and again, has instructed that AEDPA, by setting forth

necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.') (internal citation omitted).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in United States Supreme Court cases, or if it decides a case differently than the United States Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from United States Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

**V.    DISCUSSION**

**A.  Ineffective Assistance of Trial Counsel**.

The petitioner argues that his trial counsel was ineffective for: (1) not forming an adequate working relationship with him; (2) failing to move to dismiss the indictments based on

Donegan's testimony; (3) advising the petitioner to plead guilty, despite knowing that the indictments were defective; and (4) failing to allow the petitioner to give a statement in allocution at the sentencing hearing.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In

those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficult of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Richter*, 131 S. Ct. at 786).

## 1. Inadequate Working Relationship

The petitioner contends that his trial counsel was ineffective for not forming an adequate relationship with him. The petitioner fails to allege any facts to support this contention, so it is not clear what the petitioner believes was lacking in his relationship with his counsel, separate from the petitioner's claims that counsel was ineffective in specific ways as discussed below. However, the petitioner raised a similar claim before the trial court in his amended petition for post-conviction relief, claiming that counsel had "failed to adequately communicate with him," "rarely discussed his case with him," and "failed to discuss various legal alternatives available to him." (ECF No. 28-10 at Page ID# 386.) The trial court considered and rejected this claim, crediting trial counsel's testimony at the post-conviction evidentiary hearing "that he thoroughly consulted with the petitioner regarding his case and possible sentencing scenarios." (ECF No. 28-10 at Page ID# 396.) The petitioner did not raise this claim before the TCCA. Thus, the respondent argues that the petitioner procedurally defaulted this claim.

The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved

complicated issues of state law."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the court may assume without deciding that there was no procedural default or that the petitioner could show cause and prejudice for that default. *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). The court will overlook the procedural default and consider this claim on the merits.

At the post-conviction hearing, the petitioner testified that he did "not really" have a chance to communicate with his counsel about his case, "like for . . . [a] better understanding about my rights, and what I could do as far as the allegations on all of this stuff." (ECF No. 28-11, P.C. Tr. at Page ID# 408.) But, when pressed, he admitted that his counsel explained the charges against him and explained that he could receive a 57-year sentence if he lost at trial. (*Id.*) Additionally, the petitioner testified that he communicated with his trial counsel by letter, in person when they were at court, and one time trial counsel visited him at the prison in which he was housed. (*Id.* at Page ID# 410.)

The petitioner's counsel testified that, after he obtained discovery documents, he reviewed them with the petitioner, and he obtained an investigator who also reviewed the discovery documents with the petitioner. (*Id.* at Page ID# 423.) Trial counsel participated in one or two video conferences with the petitioner to discuss the discovery, and they reviewed the discovery together when the petitioner was placed in the holding cell at the courthouse. (*Id.*) Trial counsel talked with the petitioner about the various charges he was facing, trial counsel explained what the state would have to prove to convict him and the evidence that the state

13

actually possessed. (*Id.* at Page ID# 424). Together with the petitioner, trial counsel looked at the value of the items that the petitioner was alleged to have stolen and discussed the events leading up to the petitioner's arrest. (*Id.*) Trial counsel recalled that petitioner had a lot of questions, "he was very into his case, very conscience [sic] about it. Was always asking questions. Wrote a lot of letters and we had a lot of correspondence back and forth." (*Id.*) Trial counsel believed the petitioner understood him. (*Id.* at Page ID# 425.) Trial counsel tried to respond to any questions the petitioner had and "would try to follow everything up in writing." (*Id.*) Trial counsel communicated the state's settlement offers to the petitioner and discussed with the petitioner what would happen at the sentencing hearing "[a]nd in fact, we called [ ] two witnesses, two of the family members to testify at th[e] sentencing hearing, but we sat down and talked about it . . . and in the weeks between the plea and the sentencing hearing we discussed it *ad nauseam*.". (*Id.* at Page ID# 427-28.) On the morning of the sentencing hearing, trial counsel talked with the petitioner at the courthouse:

> we discussed everything  . . . and [I] made sure it was clear that he understood what we were doing. . . . I advised him that I thought  . . . [the plea] was his best option under the circumstances that I didn't see an allocution, a trial or any other thing being better for him. In my legal experience and my professional experience, it was the best deal and option he was going to get at this point.

(*Id.* at 428-29.) Trial counsel spoke to the petitioner's mother or his aunt, or both, about what would happen at the sentencing hearing, and he had no doubt that the petitioner understood what would happen at the sentencing hearing. (*Id.* at Page ID#429-31.)

The evidence does not support the petitioner's claim that his trial counsel was deficient for failing to communicate and maintain an adequate working relationship with him. Moreover, even if trial counsel had been deficient, petitioner has failed to establish that any deficiency by counsel had a prejudicial effect on the outcome of the proceeding. In the context of a guilty plea,

the prejudice prong of the *Strickland* test focuses on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. While the petitioner equivocated about whether he would have gone to trial if he had understood that the trial court could order him to serve his 12- and 6-year sentences consecutively, he falls far short of establishing that it was reasonably probable that, had counsel communicated more effectively, he would have chosen to go to trial. The petitioner is not entitled to relief on this claim.

## 2. <u>Failing to Move for Dismissal of Indictments</u>

The petitioner argues that his trial counsel was ineffective for failing to move to dismiss the indictments which, the petitioner argues, were defective because they were based on the testimony of Gene Donegan, "who was not involved with [the petitioner's] case [and] had no knowledge" of the facts when he testified before the grand jury. (ECF No. 10 at Page ID# 33.) The petitioner did not raise this claim before any state court. Therefore, the respondent argues that this claim is procedurally defaulted. Because the procedural default issue raises more questions than the case on the merits, the court will consider the merits of this claim. *See Hudson*, 351 F.3d at 215-16.

It is the petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce,* 62 F.3d 818, 833 (6th Cir. 1995) (the petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander,* 11 F.3d 1349, 1352 (6th Cir. 1993) (same). The petitioner has presented no facts, and the record contains no evidence, supporting his allegations that the indictment was defective because it was based on

Donegan's testimony. Nothing in the petition suggests why Donegan's testimony before the grand jury was defective, what testimony he gave, or how it was or was not consistent with other evidence. The petitioner has not set forth any information that would allow the court to determine the veracity or propriety, or lack thereof, of Donegan's grand jury testimony. In the absence of any facts or evidence in the record to establish that the indictments were defective, the petitioner cannot meet his burden of establishing that his trial counsel was ineffective for failing to move to dismiss them. *See Hutchison v. Bell,* 303 F.3d 720, 749–50 (6th Cir. 2002) (recognizing that "[t]his court has held that a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material" citing *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997)); *see also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) (recognizing that counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.) Where counsel's performance did not fall below an objective standard of reasonableness, the court need not reach the question of prejudice. *See Davis v. Lafler*, 658 F.3d 525, 538 (6th Cir. 2011); *see also Strickland,* 466 U.S. at 700 (Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.) The petitioner is not entitled to habeas relief on this claim.

### 3. Advising Petitioner to Plead Guilty

The petitioner contends that his trial counsel was ineffective for advising him to plead guilty where, as here, the petitioner argues, the indictments were defective because they were based on Donegan's testimony. The respondent argues that this claim is procedurally defaulted. Nevertheless, the court considers the merits of this claim. *See Hudson*, 351 F.3d at 215-16.

As set forth above, there is no evidence from which the court can discern any defects to the grand jury process that resulted in the indictments against the petitioner. Thus, the petitioner's counsel could not have been deficient for advising the petitioner to accept a plea based on the charges set forth in the indictments. In the absence of deficient performance by counsel, the petitioner fails to state a claim for ineffective assistance of counsel. *Strickland,* 466 U.S. at 700.

### 4. <u>Failing to Allow the Petitioner to Give a Statement in Allocution</u>

The petitioner argues that his trial counsel was deficient for failing to advise him of his right to give a statement in allocution at the sentencing hearing. While the petitioner does not expressly raise as a ground for habeas relief his trial counsel's failure to advise him that he had a right to testify at the sentencing hearing, the state court's discussion implicates the petitioner's right to testify as well. The TCCA considered the petitioner's claim that his counsel was deficient and, guided by the standard set forth in *Strickland*, rejected it as follows:

> Allocution is "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence. This statement is not subject to cross-examination." *State v. Keathly*, 145 S.W.3d 123, 125 (Tenn. Crim. App. 2003) (quoting *Black's Law Dictionary*, 75 (7th ed. 1999)).

> There is no constitutional right to allocution. *See State v. Stephenson*, 878 S.W.2d 530, 551-52 (Tenn.1994), *abrogated on other grounds by State v. Saylor*, 117 S.W.3d 239 (Tenn. 2003) (citing *Hill v. United States*, 368 U.S. 424 (1962)); *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976)). A defendant is not required to provide a statement in allocution, and the sentencing judge is only required to consider "[a]ny statement the defendant *wishes* to make in the defendant's own behalf about sentencing." T.C.A. §40-35-210(b)(7) (emphasis added). "Clearly, any defendant's right to allocution is depend[e]nt on that defendant's desire to make a statement." *Joseph B. Thompson v. State*, No. E2004-00920-CCA-R3-PC, 2005 WL 2546913, at *27 (Tenn.Crim.App. Oct. 12, 2005), *perm. app. denied* (Tenn. Jan. 30, 2006). Although a trial court's refusal to

allow allocution is reversible error, trial courts are not required to inquire whether the defendant wishes to make any such statement. *State v. Robert Eugene Crawford, Jr.,* No. E2012–00001–CCA–R3–CD, 2013 WL 4459009, at *27 (Tenn.Crim.App. Aug. 19, 2013); *see also Keathly,* 145 S.W.3d at 126 (quoting *United States v. De Alba Pagan,* 33 F.3d 125, 129, 30 (1st Cir.1994)).

Trial counsel testified that he did discuss with Petitioner both the opportunity to give a statement in allocution and the right to testify at the sentencing hearing. Trial counsel testified that he advised Petitioner against testifying or making a statement and that Petitioner agreed with his advice. Trial counsel stated that it was Petitioner's decision not to testify. The post-conviction court accredited trial counsel's testimony. Petitioner did not prove by clear and convincing evidence that trial counsel's performance was deficient in this regard.

Even if trial counsel failed to inform Petitioner of his statutory right to allocution, Petitioner has failed to demonstrate how he was prejudiced. *See Mark C. Noles v. State,* No. M2009–02073–CCA–R3–CD, 2010 WL 2867180, at *11 (Tenn.Crim.App. Jul. 22, 2010), *perm. app. denied* (Tenn. Nov. 10, 2010); *Joseph B. Thompson,* 2005 WL 2546913, at *27. The only issue before the sentencing court was whether the sentences in the two cases would be served concurrently or consecutively. As previously determined by this Court on direct appeal, there was ample evidence in the record to support the sentencing court's finding that Petitioner was a "professional criminal" and that his criminal record was "extensive" under Tennessee Code Annotated sections 4035–115(b)(1) and (2). *See Marques Sanchez Johnson,* 2012 WL 518836, at *4. Petitioner's apology "that I did something to" the victims most likely would have had no bearing on the sentencing court's conclusions.

*Johnson*, 2015 WL 832328, at *4–5 (emphasis in original and footnotes omitted).

The TCCA's conclusion that the petitioner failed to establish "by clear and convincing evidence" that trial counsel's performance was deficient was not unreasonable. The habeas court must "indulge a strong presumption" that counsel "rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland,* 466 U.S. at 688–90. The

petitioner's trial counsel testified at length at the post-conviction hearing that he advised the petitioner of his right to testify at the sentencing hearing and the right to give a statement in allocution and that, together, the petitioner and counsel concluded that the petitioner would be best served by not testifying and by allowing the two witnesses — the petitioner's mother and his aunt — "to paint the picture that we needed to paint." (ECF No. 28-11, P.C. Tr. at Page ID# 431.) The petitioner has failed to overcome the presumption that counsel competently performed his duties.

### B.     Trial Court Errors

#### 1.     <u>Failing to Allow the Petitioner to Testify or Make a Statement in Allocution</u>

With respect to the petitioner's claim that the trial court erred in not advising him of his right to give a statement in allocution at the sentencing hearing, generally, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004). Even if the petitioner's claim were cognizable on habeas however, as the TCCA observed, under state law, the trial court had no obligation to ask the petitioner if he wished to speak and neither the petitioner nor his counsel indicated to the trial court that the petitioner desired to do so.

Moreover, with respect to the claim that the court failed to advise the petitioner of his right to testify, which is not expressly raised by the petitioner, but rather, was implicated in the states court's discussion of the petitioner's claim, the trial court committed no error. In *United States v. Stover*, 474 F.3d 904 (6th Cir. 2007), the Sixth Circuit stated:

Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. . . . Barring any statements or action from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor insure that the defendant has waived the right on the record. . . . .

A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must 'alert the trial court' that he desires to testify or if there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Id.* at 908-09 (internal citations omitted); *see also United States v. Ortiz*, 82 F.3d 1066, 1069 n. 8 (D.C. Cir. 1996) (noting the agreement of the First, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits that the trial court does not have a duty to *sua sponte* conduct an on-the-record colloquy regarding waiver.) The trial court did not deny the petitioner an opportunity to testify. Rather, the petitioner did nothing to alert the court that he had a desire to testify. Barring some "statement or action" by the petitioner, the trial court had no duty to inquire. *Stover*, 474 F.3d at 908-09. The petitioner is not entitled to habeas relief on this claim.

## 2. <u>Consecutive Sentences</u>

The petitioner contends that the trial court erred in concluding that his sentences should run consecutively, rather than concurrently. In support of this claim, the petitioner argues that the "trial court failed to adequately find that . . . consecutive sentencing was reasonably related to the severity of the offense and necessary to protect the public from further criminal conduct . . . " or any other grounds warranting consecutive sentences. (ECF No. 1 at Page ID# 2.)

Trial courts are accorded wide discretion in sentencing decisions. Claims arising out of those decisions are not generally cognizable upon federal habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Haynes v. Butler,* 825 F.2d 921, 923 (5th Cir. 1987). Because the petitioner alleges only that the trial court erred in its application of state sentencing law, his claims are not cognizable on habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris,* 465 U.S. 37, 41 (1984) (recognizing that "[a] federal court may not issue the writ on the basis of a perceived error of state law."); *see also Daniels v. Anderson*, No. 3:08cv697, 2009 WL 5219036, at *6 (N.D. Ohio Dec. 31, 2009) (finding that a habeas claim that the state trial court erred by imposing consecutive sentences was not cognizable absent an attendant constitutional claim). Even if the petitioner's claim that the state court violated state sentencing laws were cognizable on federal habeas, it would be rejected because the trial court expressly found that consecutive sentences were necessary because of "the severity of the offenses" and "in order to protect the public from further criminal acts committed by [the petitioner]." (ECF No. 28-1 at Paged ID # 187.)

Moreover, even if the petitioner intended to allege, as respondent suggests, that the trial court's decision to order that his sentences run consecutively somehow violated his constitutional rights under the Fifth, Sixth and Fourteenth Amendments, he would still not be entitled to relief. Setting aside that such a claim has never been reviewed by the state courts, "[a] violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process . . . ." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008). The petitioner presents no facts, and there is no evidence in the record,

to demonstrate that the imposition of consecutive sentences here "amount[ed] to a fundamental miscarriage of justice or a violation of due process." *Id.* Moreover, the imposition of consecutive sentences as authorized by state law does not, by itself, amount to a constitutional violation. *See Oregon v. Ice*, 555 U.S. 160, 169-69 (2009) (holding that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment); *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (internal quotation marks and citation omitted) (holding that "a sentence within the statutory maximum set by statute generally does not constitute cruel and unusual punishment"); *Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding"). The petitioner is not entitled to relief on this claim.

### C.      Prosecutorial Misconduct

#### 1.      Securing Grand Jury Testimony from Donegan

The petitioner contends that the prosecutor engaged in misconduct by securing grand jury testimony from Donegan, despite the fact that Donegan had no involvement with his case.

The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Bagley,* 473 U.S. 667, 678 (1985). In order to establish prosecutorial misconduct or a denial of due process, the petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986).

As thoroughly explained above, the petitioner has failed to demonstrate that relying on the testimony of Donegan rendered the grand jury process infirm in any way. As a result, the

petitioner cannot state a claim for prosecutorial misconduct based on Donegan's testimony to the grand jury.

2. ***Brady/Giglio* Violation for failing to Disclose Use of False Grand Jury Testimony by Donegan**

The petitioner contends that the prosecutor knowingly did not disclose the false evidence used to indict and convict him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150, 153 (1972).

A prosecutor may not deliberately deceive "a court and jurors by [presenting] known false evidence," *Giglio*, 405 U.S. at 153, and a prosecutor must disclose evidence favorable to the accused, *Brady,* 373 U.S. at 87. By relying on both *Brady* and *Giglio,* the petitioner "implicitly asserts a specific type of *Brady* violation: one where the prosecutor failed to correct false testimony that he knew, or should have known, to be false (a 'knowing-presentation-of-false-testimony claim')." *Rosencrantz v. Lafler*, 568 F.3d 577, 583 (6th Cir. 2009). The standard is the same as described above — the petitioner must demonstrate that the grand jury witness made a materially false statement that the prosecutor knew was false. *See O'Dell*, 805 F.2d at 641.

Because the petitioner has failed to demonstrate that Donegan gave any false statements to the grand jury, he is not entitled to habeas relief on this claim.

**VI     CONCLUSION**

For the foregoing reasons, the habeas corpus petition will be denied and this matter dismissed with prejudice.

The court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. The petitioner may

not take an appeal unless a district court judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).)

In this case, the issues raised in the petition do not merit further review. Thus, the court will deny a COA. The petitioner may, however, seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate order is filed herewith.


_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE